Good morning. We have two cases on calendar that are being submitted on the briefs. Those are 24-3171 Juan Cotac-Montarosa v. Pamela Bondi and 24-4820 United States of America v. Aaron Anthony Ordonez. In accordance with the respective orders previously entered on the dockets of those two cases, those two cases are hereby submitted for decision on the briefs. And we'll proceed with argument in the first case on calendar for argument this morning, which is 24-3099 United States of America v. Kendall Kevin Anagal. And we'll hear first from Mr. MacDonald. Good morning, Your Honors. May it please the Court, Randy MacDonald. Can you get closer to the microphone? Sure. Yeah. Thank you. Randy MacDonald on behalf of the defendant Kevin Anagal, I'd like to reserve three minutes for rebuttal if I may. I'll watch my clock. There are three issues that Mr. Anagal has raised here today. And unless this Court would like to discuss one of them in particular first, I'd like to turn first to the juror issue relating to the 606B issue that was raised in my brief. So I think this is interesting in that there are plenty of general prescriptions about when testimony relating to jury deliberations are permissible. But what we have here, I think, is really an issue of first impression, which is, I think, two separate issues. First of all, whether a juror who deliberates in one jury and then is discharged before the verdict is entered is subject to the same prescriptions of 606B. And second, whether a juror deliberations that occur before the discharge of a juror and a new jury is constituted are affected by 606B. So far as I can tell, there are no cases in the circuit or any other circuit which have dealt with this specific issue. We know that from this Court's decision in Lung that there are some general prescriptions that we understand from Rule 606B. It applies in any proceeding involving an inquiry into the validity of the verdict, which I think we concede that that is applicable here. But what I think is at issue is whether the testimony from the jurors involves jurors' internal processes or is occurring during deliberations under the rule. And so I think I'd like to take a step back and talk more specifically about the testimony that the defendant tried to elicit in this case or asked the District Court to elicit. So this, of course, was an issue where we know that there were two juror notes. One said the jury is deadlocked 11-1 and another which made statements that ultimately led to the disqualification of juror 5. We know that juror 14 wrote both of those notes. But what we do not know and what I think is relevant here is why juror 14 did not mention the misconduct beforehand prior to the note that he ultimately sent. And also... Wouldn't that issue that you're talking about right now, when, you know, let's just assume for a moment that there is further an evidentiary hearing on this topic, wouldn't that necessarily require the juror to talk about or perhaps talk about the motive in reporting later, which may get into the jury deliberation and the 11-1 split? So as to juror 14 testimony, I agree that there is a potential for that juror's testimony to deviate into, you know, a discussion about that juror's motivations and internal processes as to the verdict itself. But I think there is also a possibility that the testimony about his motive for asking... For trying to kick juror 5 off of the jury, I don't think that necessarily it would mean going into the juror's internal processes. I suppose it is possible that that could happen. But that testimony, I think... Are you contesting that juror number 5 was properly removed? I do not believe that my brief argues that juror number 5 was not properly removed, Your Honor. I think specifically... So why does it matter if juror 14 presented a note that properly led to the removal of a juror who the district court found violated the court's instructions? Why would it matter what the motivation of that person was, apart from the fact that it might reflect on the deliberative process, which is exactly what 606b bars? So this court has said in Dyer that a jury that is biased sort of per se requires a new trial and that a court has to inquire into the reason for or the existence of juror bias. Now, I acknowledge that Dyer is a habeas case and does not involve 606b. So what evidence suggested that the juror was biased? Well, I think that is the question that we really needed to get into with the juror testimony. But there's no evidence. So how is the judge supposed to... Like, are they supposed to surmise that this is happening? How is... Well, I think that there was perhaps an inference that was raised in this case because of the quick succession of the notes from juror 14. First, there's an 11 to 1 split. Second, we need to get rid of juror number 5. And I think that the additional evidence that would have been necessary to make that... Juror number 5? The second note suggested that juror number 5 had committed misconduct. And that is the ultimate note that led to juror number 5's removal. But you don't contest that the juror was properly removed for violating the court's instructions. I agree that the juror violated the court's instructions. And there was a hearing as to whether juror number 14 and juror number 5 ought to be removed. I think your point is that the report came late. So there's also the additional inference about the timing of when the report was made in addition to the removal and then the change in the jury verdict. I guess what I'm struggling with is that at some point, it's sort of a catch-22 for you because at some point, especially if you're conceding that juror number 5 was properly removed. And I could maybe see a circumstance where the two are... You know, it's not mutually exclusive. You can have somebody removed, you know, properly, but also be able to make an argument that there was a biased jury. But in sort of exploring that, I don't know how you don't get into the deliberations. You needed that piece to be able to essentially show that there was an improper motive. So I guess to answer your first question, I agree that the procedure by which juror number 5 was removed was appropriate in that conceitedly juror number 5 did not follow the court's instructions. But I think the underlying question is whether the reason for the report that ultimately got juror number 5 off of the verdict was a result of juror bias. And I guess separate and apart from juror number 14's motivation, which... So I guess taking a step back, Rule 606 only precludes juror testimony as to their motivation. External testimony or external evidence about jury motivation is not, I think, the subject of Rule 606. So I think that what we are talking about here is separate and apart from whether juror 14's testimony would be admissible, is juror number 5's testimony about whether he was the holdout juror admissible. And I think that's important because coupled with the evidence that we have, it would lead to an inference that juror number 14 was biased. Would that not be barred by 606B, the statement by juror number 5 that he or she was the holdout? So I think there's two arguments there, Your Honor. First of all, juror number 5 was discharged from the jury and was not part of the ultimate jury that made the decision. And second of all, there were, in a sense here, two separate juries. So you're saying that if someone's excused from the jury, then 606B doesn't apply and they can say anything they want about what happened in the jury's deliberations? No, I don't think that's true because they would not be able to speak to other jurors' motivations. And that's not, I think, what we would be asking juror number 5 to testify to. What we would be asking is, were you one of the holdout jurors before the verdict was reached, before you were discharged? I don't think that he could speak to anything that was not evidence of the juror's statement on the matters listed in 606B-1. So I agree that it's it's subject to that particular that that particular juror is giving a testimony about his statements, but he was discharged from the jury and is no longer a part of that process. So I don't think it's true. After the verdict is entered, they're all discharged. And, you know, the point is it's the only reasonable reading of the rule is that it refers to statements made in the capacity as a juror during that capacity as a juror. So this notion that it doesn't apply to people who are ex-jurors, do you have any case authority that would support that proposition? I acknowledge that the case law on this particular issue is nonexistent. It does not seem to be a reasonable reading of the text. But do you have other categories of evidence you can identify that could have been available? Apart from ex-juror statements that that would escape that would escape 606B here. So I don't believe that on this record there's any additional evidence that could have been presented. And so can you articulate what you were looking for that wouldn't fit within 606B, the target of what you were trying to get? Because it seems that not only was there not any evidence that wouldn't be barred by 606B, there wasn't anything in the target range that was outside 606B. So I acknowledge that on this record, I'm not sure what else other than the testimony of juror number five and juror 14 would be available. Counsel, can I ask you about another part of your appeal? You argue that the evidence with regards to the peepholes should be admissible under 404. But why isn't that evidence relevant on count five and in terms of the specific intent of the individual? Why isn't it admissible under that analysis? And I'm sorry, Your Honor, count five. Count five having to do with the I believe involving the contact with minor. So specifically, I think that's one of the basis of appeal. My question is why doesn't it go to probativeness of his specific intent to receive sexual gratification? Why doesn't it go to that? So I think you're right that it probably does go to that, Your Honor. Then why is that wrong? So I think this is not a situation where the nature of the contact itself, I think, is also indicative. If the contact happened, if the statements of the victim here are true, I think that the nature of the contact itself necessarily, I don't want to say necessarily implies, but I guess what I'm saying is the additional probative value of the peephole evidence is I would say extraordinarily negligible next to the statements of the victim at issue here. So let me ask you another question about this issue on the peepholes and the video recording evidence in particular. I'm troubled by the fact that at first the defense counsel's objections were sustained. Then on foundation grounds, there was ongoing questioning. I can't really tell that the issue was resolved, and yet the evidence came in. So let's just assume for a moment that I agreed with you that the peepholes and the video recording evidence violated Rule 404. The government in its brief makes an argument about harmless error, which I can't find anywhere what your response to that is. And I am curious to know how you would respond to the argument that that would be, it's harmless. So, yes, and I think the government's argument about harmless error is effectively, you know, the allegations in the indictment were much worse than the allegations of the peephole evidence. And so what is the harm? And I think, first of all, it's the government's burden to prove that the error was harmless beyond a reasonable doubt. And I think just by pointing to other. Not that's for constitutional error. This would be evidentiary error under 404 B. So that's just preponderance. OK, so I guess I would say that, you know, it is probably always the case that in a case involving charges as serious as this, that whatever additional prior acts evidence is going to come in is necessarily going to be lesser than the charge defense. And so I guess if the if the government's only argument is that the charge defenses were worse, then it seems to me that any other evidence of any other crime could come in and the and the evidence would be harmless. So I see that I'm running out of time. I'd like to reserve the remainder of my time. I'll give you two minutes for rebuttal. I asked you a lot of questions. All right. We'll hear now. Ms. Kubota. Good morning, your honors. May it please the court. I'm Vanessa Kubota and I represent the United States. The jury in this case heard overwhelming admissible evidence that the defendant repeatedly raped a nine year old girl in his care. And this court should affirm the convictions for at least four reasons. And I'll briefly cover my outline and then go straight into the jury and the 404 B issues. First of all, under any standard, Dr. Dutton's testimony was properly admitted, as this court has held in many cases and more recently in cases involving both Dr. Dutton's expert testimony itself and the same topic and same scenarios such as Pacheco, James and Jones, and even before that, many similar cases. As far as the rule for 13 evidence that was also properly admitted here and not overly prejudicial. Going into the prior acts, evidence of the people's and the cell phone testimony. I just want to say, first of all, that the evidence certainly came in as Judge Mendoza was pointing out. And so far as it went to the sexual intent, that is part of an element in count five. But it also came in under the value of the general motive intent preparation. It was also inextricably intertwined, although I will say the record indicate whether or not there was any recording of the victim. Because I saw a reference to the mother and to the sister. But I wasn't sure I had knew the full contents of the entire record. Was there any any evidence to indicate that the victim was captured on the recording? No, Your Honor. There was no evidence that the child victim was on the cell phone recording. How then can it go to the element in count five? Because the rest of what you described really just sounds like propensity. So, Your Honor, it goes to not only to motive in count five, but also to preparation. But the way that it meets the sort of motive is it shows the defendant's sexual intent to sort of exert his governance over the space of the bathroom, which was the locus of the abuse in this case. The fact that the victim's sister testified only to having seen videos of herself and her mother in that cell phone doesn't preclude the overall sort of implication here that the defendant is zeroing in on a space in invading privacy, exerting governance over a place that became one of the main loci of abuse here. Additionally, it also tends to go to specific intent and exerting governance is what you're arguing now, which interesting phrasing. But you're saying that that's what happened here. Explain that to me. I guess I'm not seeing it now. Well, Your Honor, it certainly does go to the defendant's sexual intent toward this victim. But it also goes toward his intent to use the bathroom as a basis to exert his sexual gratification. And, Your Honors, as far as the argument of harmlessness here, although we certainly do believe that the evidence properly came in again, I will say Rule 404B is a rule of inclusion. And it's only the only time it should be excluded is if its only function is to show propensity. Here we have other bases for admission of that evidence. And so it certainly should come in. But even if the court were to find that the pupils or the cell phone weren't properly admitted, it's harmless for two reasons. Not simply because that evidence was more benign than the charged offense, of course, but also because there was significant corroboration. This isn't a he said, she said case. This is a case where you have the child. Couldn't the flip side of what you're arguing be true, too? Which is if the other charged allegations were so severe, then why? Why? Why does the government need to introduce and admit propensity evidence? I mean, that's kind of the whole point of 404. Well, Your Honor, even though certainly the government wins even on a harmlessness argument because of the other corroborative evidence. But the benefit of introducing that evidence. And remember, Your Honor, the necessity requirement doesn't necessarily mean that it has to be indispensable to the case. It just simply helps guide the jury in understanding all of the context. And this also goes to the government's inextricably intertwined argument as well, that this sort of built the context around the crime. The defendant didn't, as we expressed in our in our answering brief, the defendant didn't just begin by violently raping this child. It was a gradual process. This also represents escalation. And also, I will add that the significance of the people's going straight into the toilet. The toilet was also a location where the victim was repeatedly abused by the defendant. And also the fact that they were born about six inches through drywall to the defendant's bedroom, which was also another location. I don't really see how this is not 404B evidence. I understand your arguments that it's within a 404B exclusion or it's harmless error. But it's not part of the same transaction as the actual charge conduct. So it doesn't seem to fall. It is other acts, which is what 404B covers. Exactly, Your Honor. I will add that this court in Beckman. To agree that it's not part of the transaction and it has to be analyzed under 404B. I agree that it's not part of the transaction as to the child. But there's two bases for inextricably intertwined. It's part of the coherent theory. The other prong of inextricably intertwined. It does sort of give context. So there are two prongs under inextricably intertwined. And I do agree, Your Honor, that it it more properly fits into the second prong of the analysis. But I will add that this court in Beckman has also held. I'm not sure I see how it fits under the second category either, because I think you can give the context for this whole story without ever telling that. I mean, I agree that it's probative, but then. But the analysis of, you know, whether it comes in has to be done under 404. I don't see how you escape it just because you think it's a prelude. Certainly, Your Honor. And the government is perfectly comfortable arguing. And we believe the record supports a 404 be admissible admissibility basis. And so the inextricably intertwined theory was also just an alternative vehicle to admit the evidence. But I do agree with your honor that the 404 B is a strong is a strong basis to admit this evidence. And just going quickly to the jury issue, I just want to say there's nothing remarkable about this case. First of all, there's a lot of speculation. And even if one were to draw the inference that juror 14 had some sort of ignoble motivation to sort of like throw juror five under the bus, maybe juror five was the lone holdout. But it still doesn't matter because juror 14 was actually far from manipulating the jury process. She was actually protecting it. She was following the admonitions, albeit late. But she was following juror 14 removed for revealing the count. Well, your honors, there's a direct violation of the court's instruction. Yes, your honor. It was a it was it was a violation. And we don't know what compelled her to reveal the numerical standing. The reason why we don't want jurors revealing the numerical standing is insofar as it could be to the appearance of coercion or lead to some sort of. If if the court were to have to have given an Allen charge, that would have been dangerous. And so far as it could have led to coercion and reversibility. Luckily, we didn't have that happen here. But as far as the juror 14's misconduct. Well, I'm excuse me, not misconduct. As far as your 14's revealing inadvertently the juror number. That was certainly on the court recognized that she did disobey that instruction. But it doesn't rise to the level of misconduct. Going back to what this court has found. Does 606 B prevent us from considering in an inquiry into the validity of the verdict? The fact that it was 11 to one. Well, your honor, it's sort of one of those things, as they say, colloquially, the court can't unsee the numerical standing once it's been revealed. We do that all the time. We we have evidence that we then rule cannot properly be admitted. We've seen the evidence. We know it. And then we set it aside and we're able to then decide without regard to that. Does 606 B instruct us to do that even with respect to the 11 to one comment? No, your honor. Well, 606 B absolutely precludes any. That's not a statement about the jury's deliberations and processes. Certainly it's precluded by 606 B. I thought you said it wasn't precluded. No, your honor. What I mean to say is that it would have been improper for the court to to allow the defense's request to go through, to further pry into the nature or the identity of juror five or the knowledge about the identity of juror five or the motivation for reporting juror five. Juror five was removed for his own misconduct. I know defense. I'm sorry. I know Professor McDonald cited a case, a habeas case dire. Since we're talking about habeas cases, Perez versus Marshall is a case that if we were to take this scenario to its extreme, that's the one one nine F3D 1422. There was a soldier who was a holdout for acquittal. And in that case, the court held that even though the court knew the nature and the identity of this one juror, that was the one loan holdout that juror was properly removed from the jury for cause because of her severe emotional instability. And so we even if we were to take it to its logical extreme, what remedy was the defense really seeking? Defense wanted to know that juror five was the loan holdout. So then the defense could argue that juror five that the report by juror 14 major five be excused. But again, that was a triggering factor. That wasn't the cause. The court actually engaged in a sort of interview process with both jurors. Both counsel were present. They also had the opportunity to question both jurors and juror five admitted not only to speaking with the defendant's family, but then it sort of came out through the process of questioning that he had spoken to not one. Counsel, you've been talking for about five, six minutes after Judge Collins asked you to ask your question about why was it proper, improper as to not excusing juror 14 was his question. Oh, I'm so sorry. Thank you, Your Honor. So it was proper not to excuse juror 14. The court has extremely high discretion in determining which jurors or when to excuse a juror for cause and when it is appropriate. And in this case, the court properly questioned juror 14 and ultimately determined that because she did report juror five for misconduct in accordance with her repeated admonitions, that the only sort of her failure was simply that she didn't report it immediately, but she did report it. And in fact, I would argue that the fact that juror 14 reported juror five's misconduct goes to credibility and goes to the sort of the sanctity of juror 14's ability to deliberate without bias. And again, we have to go back to the question of what do we really know on this record and what should we know? And a lot of this is speculation. This court in the unpublished decision of Cariaga, which cites Dunn and Powell, said that it's improper to think about reversing a verdict for the sake of speculation, even when you have overtly contradictions in the verdict form. And so here we don't have anything like that. And the court properly declined defendant's invitation to pry into the mental state of juror 14. So we ask that you affirm the convictions and sentence and I welcome the court's questions or I'm happy to cede the remainder of my time. All right. Thank you, counsel. We'll hear rebuttal now. So I think I want to address a couple of things about the 404B analysis that was just discussed. So I think that I infer from the court's questioning that that is sort of where we are. We are concerning the admissibility of the people in the video testimony. I think it is absolutely relevant that the videos do not cover the actual charge conduct against the victim. Don't you run into the problem that we were just talking about, the harmless error problem? You run into that problem. Yeah, I concede that there is. So I think I would just fall back on the argument that I previously made, which was if every time we're going to say, well, the charge conduct was worse than the evidence that was ultimately brought in, then I think that gives carte blanche for the government to introduce whatever prior act testimony that they want to. And just later on say, oh, well, this wasn't harmless. I think that necessarily trying to insinuate that the conduct was part of a repeated pattern where, in fact, the only evidence of that pattern are these peepholes that may or may not have been drilled by the defendant and which he may or may not have used for the victim. I think that necessarily is, you know, not harmless. I think what you're doing is you're insinuating that there's a repeated practice where, Judge Collins, I think you hit it right on the head. This is not this doesn't seem to be part of the same conduct. So I think necessarily it is propensity evidence. And the rule requires that propensity evidence be kept out unless it's for an admissible purpose. And so I think that getting bogged down in the harmless nature of that sort of gives the government free reign to introduce whatever evidence that they want. If there are no other questions. All right. Thank you. The case just argued will be submitted.
judges: COLLINS, MENDOZA, DESAI